United States District Court
Southern District of Texas

**ENTERED**

March 03, 2022

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

EOG RESOURCES, INC.,              §
                                  §
               Plaintiff,         §
                                  §
v.                                §   CIVIL ACTION NO. H-21-3407
                                  §
F & C ROUSTABOUT, LLC and         §
HUDSON INSURANCE COMPANY,         §
                                  §
               Defendants.        §

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff, EOG Resources, Inc. ("Plaintiff"), filed suit in
the District Court of Harris County on September 17, 2021, against
defendants F&C Roustabout, LLC ("F&C") and Hudson Insurance Company
("Hudson") (collectively, "Defendants"), asserting a breach-of-
contract claim against F&C and seeking declaratory judgment against
F&C and Hudson that Defendants are obliged to defend and indemnify
Plaintiff in an ongoing lawsuit.[1]  Pending before the court is F&C
Roustabout, LLC's FRCP 12(b)(2) Motion to Dismiss for Lack of
Personal Jurisdiction ("F&C's Motion") (Docket Entry No. 10).  For
the reasons stated below, F&C's Motion will be **GRANTED**.

---

[1]Plaintiff  EOG  Resources,  Inc.'s  Original  Petition
("Plaintiff's Original Petition"), Exhibit A to Defendants' Notice
of Removal, Docket Entry No. 1-3, pp. 8-10 ¶¶ 24-36; <u>see also</u> p. 8
¶ 21 (stating that the lawsuit is still pending).  For purposes of
identification all page numbers reference the pagination imprinted
at the top of the page by the court's Electronic Case Filing
("ECF") system.

## I. <u>Factual Allegations and Procedural Background</u>

Plaintiff is a Delaware corporation.[2]  F&C is a New Mexico limited liability company with its principal office in New Mexico.[3] Hudson is a New York company with its principal place of business in New York.[4]

Plaintiff entered into a Master Services Agreement ("MSA") with F&C on February 7, 2018, setting forth the terms under which F&C "may agree" to perform roustabout work and ancillary functions for Plaintiff "from time to time at [Plaintiff's] request" "in the onshore and offshore areas of the Continental United States . . . ."[5]  Plaintiff sent a copy of the MSA from its headquarters in Texas to F&C in New Mexico, and F&C returned a signed copy to EOG in Texas.[6]  Plaintiff executed the MSA in Texas on February 7, 2018.[7]  The MSA provides that

> 7A.  [F&C] AGREES TO RELEASE, PROTECT, DEFEND, INDEMNIFY
>      AND HOLD [EOG] HARMLESS FROM AND AGAINST ALL

---

[2]<u>Id.</u> at 3 ¶ 8.

[3]<u>Id.</u> ¶ 9.

[4]<u>Id.</u> at 4 ¶ 10.

[5]MSA, Exhibit B to Plaintiff's Response to Defendant F&C Roustabout, LLC's FRCP 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction ("Plaintiff's Response"), Docket Entry No. 16-2, p. 1.

[6]Declaration of Brian Chandler Under Penalty of Perjury Pursuant to 28 U.S.C. § 1746, Exhibit A to Plaintiff's Response, Docket Entry No. 16-1, p. 2 ¶ 4.

[7]<u>Id.</u>

CLAIMS, WITHOUT LIMIT, ON ACCOUNT OF BODILY INJURY, SICKNESS, DISEASE OR DEATH, OR LOSS OF OR DAMAGE TO PROPERTY OF [EOG] ALLEGEDLY OR ACTUALLY SUSTAINED DURING, OR DIRECTLY OR INDIRECTLY ARISING OUT OF, OR IN ANY WAY CONNECTED WITH OR INCIDENTAL TO, THIS AGREEMENT OR THE OPERATIONS CONTEMPLATED THEREBY, INCLUDING ANY LOADING, UNLOADING, INGRESS, OR EGRESS OF CARGO OR PERSONNEL, REGARDLESS OF NEGLIGENCE OR OTHER FAULT OF [EOG]. [F&C] EXPRESSLY AGREES TO INDEMNIFY [EOG] FROM ALL LOSSES, DAMAGES, CLAIMS, COSTS, LIABILITIES, AND/OR OTHER EXPENSES ARISING OUT OF, OR INCURRED IN CONNECTION WITH, CLAIMS BROUGHT BY [F&C] REGARDING ALLEGED OR ACTUAL MISCLASSIFICATION AS AN INDEPENDENT CONTRACTOR.

MSA, Exhibit B to Plaintiff's Response, Docket Entry No. 16-2, pp. 6-7 ¶ 7A.

On January 13, 2021, Manuel Cisneros, an employee of F&C, filed a lawsuit against Plaintiff in the 1st Judicial District Court of Santa Fe County, New Mexico.[8] Cisneros alleges that on March 16, 2020, he was working at a compressor station near Jal, New Mexico, when he was injured due in part to negligence attributable to EOG.[9]

Plaintiff brought suit against Defendants on September 17, 2021, seeking a declaration that Defendants are obliged to defend and indemnify Plaintiff in the _Cisneros_ Lawsuit.[10] F&C removed

---

[8]See Plaintiffs' First Amended Complaint for Personal Injuries and Loss of Consortium ("Cisneros Complaint"), Exhibit C to Plaintiff's Response, Docket Entry No. 16-3, p. 3 ¶ 13 (stating that Cisneros is an employee of F&C).

[9]Id. at 2-3 ¶¶ 10-20.

[10]Plaintiff's Original Petition, Exhibit A to Notice of Removal, Docket Entry No. 1-3, pp. 8-10 ¶¶ 24-36.

Plaintiff's suit to this court on October 15, 2021,[11] and filed the pending motion to dismiss for lack of personal jurisdiction on December 3, 2021.[12] Plaintiff filed a response on January 14, 2022;[13] F&C replied on January 20, 2022;[14] and Plaintiff filed a sur-reply on February 1, 2022.[15]

## II. **Motion to Dismiss for Lack of Personal Jurisdiction**

### A. **Standard of Review**

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "the plaintiff 'bears the burden of establishing the district court's jurisdiction over the defendant.'" Quick Technologies, Inc. v. Sage Group PLC, 313 F.3d 338, 343 (5th Cir. 2002), cert. denied, 124 S. Ct. 66 (2003) (quoting Mink v. AAAA Development LLC, 190 F.3d 333, 335 (5th Cir. 1999)). "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by

---

[11]Notice of Removal, Docket Entry No. 1.

[12]F&C's Motion, Docket Entry No. 10.

[13]Plaintiff's Response, Docket Entry No. 16.

[14]F&C Roustabout, LLC's Reply to Plaintiff's Response to FRCP 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction ("F&C's Reply"), Docket Entry No. 17.

[15]Plaintiff's Sur-Reply to Defendant F&C Roustabout, LLC's FRCP 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction ("Plaintiff's Sur-Reply"), Docket Entry No. 22.

presenting a *prima facie* case that personal jurisdiction is proper.'" Id. at 343-344 (quoting Wilson v. Belin, 20 F.3d 644, 648 (5th Cir.), cert. denied, 115 S. Ct. 322 (1994)). "In making its determination, the district court may consider the contents of the record before the court at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" Id. at 344 (quoting Thompson v. Chrysler Motors Corp., 755 F.2d 1162, 1165 (5th Cir. 1985)). The court must accept as true the uncontroverted allegations in the plaintiff's complaint and must resolve any factual conflict in favor of the plaintiff. Guidry v. United States Tobacco Co., Inc., 188 F.3d 619, 625 (5th Cir. 1999).

## B. Applicable Law

"A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." McFadin v. Gerber, 587 F.3d 753, 759 (5th Cir. 2009), cert. denied, 131 S. Ct. 68 (2010). Since the Texas long-arm statute extends as far as constitutional due process allows, the court considers only the second step of the inquiry. Id.

Exercise of personal jurisdiction over a nonresident defendant comports with federal due process guarantees when the nonresident

defendant has established minimum contacts with the forum state and the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 66 S. Ct. 154, 158 (1945) (quoting Milliken v. Meyer, 61 S. Ct. 339, 343 (1940)).   Once a plaintiff satisfies these requirements, a presumption arises that jurisdiction is reasonable, and the burden of proof and persuasion shifts to the defendant to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 105 S. Ct. 2174, 2185 (1985).   "The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court.'" McFadin, 587 F.3d at 759 (quoting Luv N' care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 470 (5th Cir. 2006)).

    "There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." Lewis v. Fresne, 252 F.3d 352, 358 (5th Cir. 2001).   "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011) (internal quotations and citations omitted).   Because Plaintiff does not assert that the

court has general jurisdiction over F&C,[16] the court will consider only the issue of whether specific jurisdiction exists.

A court may exercise specific jurisdiction "only when the nonresident defendant's contacts with the forum state, arise from, or are directly related to, the cause of action." Gundle Lining Construction Corp. v. Adams County Asphalt, Inc., 85 F.3d 201, 205 (5th Cir. 1996) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 104 S. Ct. 1868, 1872 n.8 (1984)).  To determine whether specific jurisdiction exists, a court must "examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice."  Id. (internal citation omitted).  Even a single contact can support specific jurisdiction if the defendant "'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  Burger King, 105 S. Ct. at 2183 (quoting Hanson v. Denckla, 78 S. Ct. 1228, 1240 (1958)). "The non-resident's 'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state."  Ruston Gas Turbines, Inc. v. Donaldson Co., Inc., 9 F.3d 415, 419 (5th Cir. 1993) (citing World-Wide Volkswagen Corp. v. Woodson, 100 S. Ct. 559, 567 (1980)).

---

[16]See Plaintiff's Response, Docket Entry No. 16, pp. 9-10 (mentioning the two types of personal jurisdiction and only arguing for the existence of specific jurisdiction).

The only relevant contacts with the forum are the defendant's — the contacts of a plaintiff or a third party with the forum State cannot demonstrate the defendant's purposeful availment. Sangha v. Navig8 ShipManagement Private Limited, 882 F.3d 96, 103 (5th Cir. 2018) (citing Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014)). The contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. Id. (citing Burger King, 105 S. Ct. at 2183). The defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. See Burger King, 105 S. Ct. at 2183 ("[W]here individuals purposefully derive benefit from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities . . . .") (internal quotations omitted).

"[M]erely contracting with a resident of the forum state does not establish minimum contacts." Moncrief Oil International Inc. v. OAO Gazprom, 481 F.3d 309, 311 (5th Cir. 2007) (internal citations omitted). "In breach-of-contract disputes, the analysis turns on a 'highly realistic' assessment of the parties' 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" Sayers Construction, L.L.C. v. Timberline Construction, Inc., 976 F.3d 570, 573 (5th Cir. 2020) (quoting Burger King, 105 S. Ct. at 2185). "A touchstone of this analysis is the 'place of contractual

-8-

performance.'" <u>Id.</u> (quoting <u>Jones v. Petty-Ray Geophysical Geosource, Inc.,</u> 954 F.2d 1061, 1068 (5th Cir. 1992)).

The fact that a defendant could reasonably foresee that it would perform some of its contractual obligations in the forum state is not sufficient to show that the forum state was the place of contractual performance. <u>See Moncrief</u>, 481 F.3d at 313 ("Mere foreseeability, standing alone, does not create jurisdiction."). Courts look for contractual language requiring performance in the forum state. <u>See International Energy Ventures Management, L.L.C. v. United Energy Group, Ltd.,</u> 818 F.3d 193, 213 (5th Cir. 2016) (holding that defendant company "had no presence in Texas" in part because the parties' agreement "did not <u>require</u> performance in Texas") (emphasis added); <u>W. Silver Recycling, Inc. v. Norma Group USA, LLC,</u> No. EP-15-CV-00115-FM, 2015 WL 5227800, *5 (W.D. Tex. Sept. 8, 2015) ("These Texas activities or contractual obligations were more than foreseeable to Defendant; Defendant <u>required</u> them.") (emphasis in original).

## C.   Analysis

Plaintiff asserts that the court has specific jurisdiction over F&C because "F&C performed work in Texas under the MSA and this lawsuit arises from the breach of the MSA[.]"[17]   F&C argues that "Plaintiff alleges no injury that arises out of or relates to any activities F&C purposefully directed at Texas[,]" and that "the

_____

[17]Plaintiff's Response, Docket Entry No. 16, p. 7.

exercise of personal jurisdiction over F&C in Texas would fail to comport with 'traditional notions of fair play and substantial justice.'"[18]

    1.   <u>The MSA Does Not Establish Minimum Contacts.</u>

Plaintiff argues that specific jurisdiction over F&C exists because (1) the MSA requires F&C to indemnify Plaintiff against lawsuits, (2) Plaintiff is based in Texas, and (3) because the MSA requires reimbursement payments to be sent to Texas, it requires performance in Texas.[19]   F&C responds that (1) "[t]here is no 'obligation to reimburse' in the MSA, or in Plaintiff's pleading[,]"[20] and (2) the MSA's contractual indemnity provision is not sufficient to show purposeful availment.[21]

Indemnity is defined as

    1.   A duty to make good any loss, damage, or liability incurred by another.

---

[18]F&C's Reply, Docket Entry No. 17, p. 7 ¶ 15.

[19]<u>See</u> Plaintiff's Response, Docket Entry No. 16, p. 7 ("F&C is required under the MSA to indemnify EOG by sending reimbursement payments to EOG at its headquarters in Texas.   This litigation arises out of F&C's refusal to perform its obligation to reimburse EOG in Texas."); <u>id.</u> at 8 ("Because this lawsuit arises from F&C's refusal to fulfill its obligation to send reimbursement payments to Texas, an obligation F&C knew would require performance in Texas, the Court has specific jurisdiction over F&C."); <u>id.</u> at 15 ("F&C knew that EOG was headquartered in Texas and that EOG would be damaged by its refusal to perform its obligation to reimburse EOG.").

[20]F&C's Reply, Docket Entry No. 17, p. 4 ¶ 8.

[21]<u>Id.</u> at 6 ¶ 14.

2.   The right of an injured party <u>to claim reimbursement</u> for its loss, damage, or liability from a person who has such a duty.

3.   <u>Reimbursement</u> or compensation for loss, damage, or liability in tort; esp., the right of a party who is secondarily liable to recover from the party who is primarily liable for <u>reimbursement</u> of expenditures paid to a third party for injuries resulting from a violation of a common-law duty.

*Indemnity*, Black's Law Dictionary (11th ed. 2019) (emphasis added).

The MSA provides that F&C has a duty to indemnify Plaintiff from and against claims for bodily injury arising out of the MSA.[22] The breach-of-contract claim in Plaintiff's Original Petition asserts that "F&C has not complied with its obligation with its obligation to defend and indemnify EOG[,]" and that "[b]y failing to defend and indemnify EOG and DC, F&C has breached its indemnity agreement with EOG."[23]

The issue is whether the MSA's indemnity provision requires contractual performance in Texas, and whether, by consenting to the MSA's terms, F&C purposefully availed itself of the privileges of doing business with Texas.  The court notes as a threshold matter that the word "INDEMNIFY" does not appear alone in this provision, but is surrounded by the words "PROTECT" and "DEFEND."[24]  If the MSA

_____

[22]MSA, Exhibit B to Plaintiff's Response, Docket Entry No. 16-2, pp. 6-7 ¶ 7A.

[23]Plaintiff's Original Petition, Exhibit A to Notice of Removal, Docket Entry No. 1-3, p. 9 ¶ 29.

[24]MSA, Exhibit B to Plaintiff's Response, Docket Entry No. 16-2, pp. 6-7 ¶ 7A.

-11-

obligated F&C to "DEFEND" Plaintiff in the underlying <u>Cisneros</u>
lawsuit, that defense would occur in New Mexico, where the lawsuit
is venued.[25]  Moreover, the MSA does not specify whether F&C would
indemnify Plaintiff by sending payments directly to Plaintiff in
Texas or whether F&C would compensate the party that successfully
sued Plaintiff — under the latter reading, the MSA would compel
performance not in Texas but in New Mexico, where the <u>Cisneros</u>
plaintiffs reside.[26]

Even if the MSA unambiguously indicated that F&C was to
indemnify Plaintiff by sending payments to Texas, the court's
inquiry would not end there.  The question remains whether agreeing
to such an obligation constitutes purposeful availment.  Plaintiff
relies on two cases to argue that the MSA's indemnification
provision supports personal jurisdiction over F&C: <u>Burger King</u> and
<u>W. Silver Recycling.</u>[27]

In <u>Burger King</u> the Supreme Court held that a Florida court had
specific personal jurisdiction over a Michigan franchisee who
stopped making contractually required monthly payments to the
franchiser in Miami.  <u>Burger King,</u> 105 S. Ct. at 2176-77.  In
<u>W. Silver Recycling</u> a district court held that a Michigan defendant

_____

[25]<u>See</u> Cisneros Complaint, Exhibit C to Plaintiff's Response,
Docket Entry No. 16-3.

[26]<u>See id.</u> at 1 ¶¶ 1-3.

[27]Plaintiff's Response, Docket Entry No. 16, pp. 12-13, 16-17.

was subject to personal jurisdiction in a breach-of-contract action in Texas because the parties had entered a waste-disposal contract that specifically required the plaintiff to use "scales licensed and bonded by the State of Texas, and located at [Plaintiff]'s El Paso, Texas location, to govern the purchase transactions." 2015 WL 5227800, at *1.

In both cases, the contract explicitly required that the defendant regularly perform a duty in the forum state, and the duty was essential to the nature of the contract itself.  The contract in W. Silver Recycling "mandated weighing in Texas," and thus "Texas performance was necessary rather than merely fortuitous." W. Silver Recycling, 2015 WL 5227800, at *5 (emphasis added).  The contract in Burger King, and thus the breach-of-contract dispute that gave rise to the case, centered on regular franchise payments and the rights and benefits provided in exchange for those payments.  See Burger King, 105 S. Ct. at 2178.  The franchisee in Burger King "deliberately reached out beyond Michigan and negotiated with a Florida corporation" and "entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida." 105 S. Ct. at 2186 (internal quotations and alterations omitted). Because performance in the forum state was necessarily among the "contemplated future consequences" of the franchisee entering the contract, the Court held that the franchisee had purposefully established minimum contacts with the forum state.

-13-

The MSA is different from the agreements at issue in Burger King and W. Silver Recycling. The MSA "does not obligate [Plaintiff] to order Services from [F&C], nor does it obligate [F&C] to accept orders for Services from [Plaintiff]."[28] The MSA could be "terminated by either Party by giving the other Party thirty (30) days prior written notice."[29] Essentially, the MSA provides a framework under which F&C can perform roustabout work for Plaintiff on a voluntary, work-order-by-work-order basis, and that work can take place anywhere "in the onshore and offshore areas of the Continental United States . . . ."[30] Any obligation the MSA's indemnity provision imposes on F&C is contingent and hypothetical — if Plaintiff sends in a work order, and if F&C accepts it, and if a lawsuit arises from work done under the MSA, then F&C must indemnify Plaintiff.

The MSA thus resembles the agreement in Santander Consumer USA, Inc. v. Anchor Motor Co., Inc., Civil Action No. 3:13-CV-154-N, 2013 WL 10914281 (N.D. Tex. Apr. 30, 2013). In that case, a district court held that an agreement between a corporation and a car dealership did not give rise to personal jurisdiction because it "[did] not envision any fixed future consequences[,]" but instead "merely provide[d] a framework under which the parties

---

[28]MSA, Exhibit B to Plaintiff's Response, Docket Entry No. 16-2, p. 3 ¶ 3.

[29]Id. ¶ 2.

[30]Id. at 1.

-14-

could later choose to interact with each other." Id. at *5.  Under
the  agreement,  "Anchor  could,  at  its  option,  submit  retail
installment  contracts  to  Santander  for  possible  purchase[,]"
whereupon "Santander, at its discretion, could then decide whether
to purchase them."  Id. at *1.  The agreement "[did] not set a
definite  term  for  the  relationship  or  require  either  party  to
perform[,]" and "include[d] no ongoing obligations."  Id. at *5.
The plaintiff specifically referred to a provision of the agreement
that obligated the defendant to indemnify the plaintiff for claims
arising  from  the  plaintiff's  conduct  under  the  agreement.   The
court  rejected  the  argument,  however,  holding  that  an  indemnity
agreement "was not 'part of an enduring or substantial business
relationship  between  the  parties,  such  that  Defendant  had
purposefully availed itself of the privilege of conducting business
with Texas[.]'"  Id. at *3 n.2.

The  Santander  decision  is  consistent  with  decades  of  Fifth
Circuit precedent holding that the mere act of sending payments to
the  forum  state  is  not  enough  to  establish  specific  personal
jurisdiction.  See, e.g., Hydrokinetics, Inc. v. Alaska Mechanical,
Inc., 700 F.2d 1026, 1028 (5th Cir. 1983) (holding that personal
jurisdiction  was  lacking  although  the  defendant  had  agreed  to
purchase specific goods to be manufactured in Texas and payment for
these goods was to be made in Texas); Stuart v. Spademan, 772 F.2d
1185, 1194 (5th Cir. 1985) ("The agreement to mail payment checks
into  the  forum  state  does  not  weigh  heavily  in  the  calculus  of

-15-

contacts."); Freudensprung v. Offshore Technical Services, Inc., 379 F.3d 327, 344 (5th Cir. 2004) ("[T]his Court has repeatedly held that . . . mailing payments to the forum state, . . . [is] insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant.").

The court concludes that "[i]n contradistinction to the contract at issue in Burger King," the MSA "did not contemplate a long-term relationship with the kinds of continuing obligations and wide-reaching contacts envisioned by the Burger King contract[,]" and that it therefore "falls short of a connection giving rise to a reasonable anticipation on the part of [F&C] of being haled into court in the forum state." See Spademan, 772 F.2d at 1194.

Plaintiff argues that "F&C has on numerous occasions bound itself to perform work in Texas under the MSA[,]" and states that "F&C performed enough work in Texas for EOG to generate 864 invoices totaling almost $2,000,000."[31] But Plaintiff does not allege that all of this work was done under the MSA and thus does not establish a link between the work and the breach-of-contract claim that is the basis of this suit. Neither party has submitted evidence as to what proportion of work done under the MSA was done in Texas, but F&C states — and Plaintiff does not deny — that "the vast majority of work done by F&C, approximately 95%, was performed

---

[31] Plaintiff's Response, Docket Entry No. 16, p. 7.

in New Mexico[.]"[32]   This suggests that the hub of the parties'
relationship was New Mexico, not Texas.   And there is no dispute
that Plaintiff is seeking contractual indemnity from a New Mexico
company against a lawsuit filed by New Mexico plaintiffs in a
New Mexico court for an injury alleged to have occurred in
New Mexico.

Plaintiff argues that personal jurisdiction in Texas is proper
in part because the MSA "requires application of Texas law, which
shows F&C purposefully availed itself of Texas law[.]"[33]   A choice
of law clause is relevant to a personal jurisdiction analysis, but
it is not determinative.   See Burger King, 105 S. Ct. at 2187
("[S]uch a provision standing alone would be insufficient to confer
jurisdiction[.]");   Electrosource, Inc. v. Horizon Battery
Technologies, Ltd., 176 F.3d 867, 873 (5th Cir. 1999) ("[A]
choice-of-law provision should neither be ignored nor considered
sufficient alone to confer jurisdiction.").   A choice-of-law
provision is not enough to override the fact that the MSA does not
require substantial performance in Texas and that the hub of the
parties' relationship is in New Mexico.

2.   Exercising Personal Jurisdiction Would Offend Fair Play
and Substantial Justice.

Even if Plaintiff had made a prima facie case that F&C
purposefully availed itself of the benefits of doing business with

---

[32]Affidavit of Martin Franco, Exhibit A to F&C's Motion, Docket
Entry No. 10-1, p. 2 ¶ 8.

[33]Plaintiff's Sur-Reply, Docket Entry No. 22, p. 2.

Texas, the court would still conclude that exercising personal jurisdiction over F&C would offend traditional notions of fair play and substantial justice.

> In determining whether the exercise of jurisdiction is fair and reasonable, the court must balance: (1) the burden on the nonresident defendant of having to defend itself in the forum, (2) the interests of the forum state in the case, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interests of the states in furthering fundamental social policies.

Sangha, 882 F.3d at 102.

F&C argues that the exercise of personal jurisdiction would impose significant burdens on it because it is at home in New Mexico, none of its members live or work in Texas, and none of its witnesses are in Texas.[34]  F&C states and Plaintiff does not dispute that F&C "is a small business engaged in roustabout work almost exclusively in New Mexico,"[35] and the court is persuaded that it would be expensive and time-consuming for F&C to transport witnesses and documents to Texas.

The forum state of Texas has little interest in this case. The only connection is that Plaintiff is a Texas company. Plaintiff has not shown that it would obtain more convenient or effective relief against F&C in Texas than in New Mexico. Moreover, a New Mexico court would be the most efficient place for

---

[34]F&C's Motion, Docket Entry No. 10, pp. 8-9.

[35]Id. at 9 ¶ 25.

resolution of Plaintiff's claims against F&C, since F&C, its members, and everything regarding the underlying Cisneros Lawsuit are in New Mexico. New Mexico has a greater interest than Texas in resolving a dispute involving a New Mexico company that arises from an accident that occurred in New Mexico and a lawsuit venued in New Mexico.

## III. Conclusions and Order

For the reasons explained above, F&C Roustabout, LLC's FRCP 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (Docket Entry No. 10) is **GRANTED**, and this action is **DISMISSED WITHOUT PREJUDICE** against defendant F&C Roustabout, LLC.

Plaintiff, EOG Resources, Inc. and the remaining defendant, Hudson Insurance Company, are **ORDERED** to file an amended Joint Discovery/Case Management Plan by March 16, 2022.

**SIGNED** at Houston, Texas, on this the 3rd day of March, 2022.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-19-